C. D. ADAIR, adm'r of JOHN R. MCDONALD, plaintiff in error, *vs.* JOHN ADAIR, Ex'r of EDWARD ADAIR *et al.*, defendants in error.

1. In a proceeding to reform a deed, on the grounds of fraud and mistake, the declarations of the grantor, made subsequent to the execution of the deed, and in the absence of the grantee, are not admissible to prove a mistake in the deed, which may be corrected in Equity.

2. Before an instrument can be reformed, it must be shewn, by clear and satisfactory evidence, that either by accident, fraud or mistake, the written instrument does not contain and express what the parties intended it should contain and express at the time of its execution. (R.)

Equity. Motion for new trial. Decided by Judge MIL-NER. Murray Superior Court. October Term, 1867.

Many questions were made by this record, but only one of them was passed upon by the Court. John Adair, as executor of Edward Adair, deceased, and others, heirs of Collins McDonald, complained that Edward Adair died in 1864, testate; that he had made a will, devising certain lands to complainants and John R. McDonald, the brother of complainants, his grand-children; that John R. died, and afterwards, said testator made another will, devising said lands to complainant, and died. But before John R. died, he lived with the testator. Testator was old and confiding. John R. was young and artful, and had obtained control over the mind of testator, and fraudulently induced testator to believe that his first will was insufficient to convey said lands to John R. and his said sisters, and that because their father was dissipated and wasteful, if testator should die, they might lose the land by said father's extravagance, and begged said testator to execute a deed, conveying said land to said John R., for the joint and equal use of himself and his said sisters. Testator told him to draw up the deed; that John R. drew a deed, conveying said land to himself absolutely, free from any trust, and the testator signed it on the 15th of January, 1861, while drunk, and without examination; that John R. got the deed from testator, by some means, without the testator's delivering it as a deed, and immediately took it to

Adair, adm'r, *vs.* Adair, ex'r.

the Clerk's office, and had it recorded; that testator continued to live on the land till his death, to-wit: on the 21st of December, 1864, and neither said John R., in his lifetime, nor his administrator or heirs, since his death, asserted any title to said property, until the death of said testator. But now, Charles D. Adair, as the administrator of said John R., has brought ejectment for said land against the complainants, as tenants in possession, while suit is pending.

The bill charged that the said testator intended to have given said land to John R., for the use of himself and complainants, that, by the fraud of John R., it was not so made, and prayed that the deed be reformed, and that John R's said administrator be decreed to hold said lands, as trustee for their joint use and benefit, and that the ejectment cause be enjoined, etc.

The defendant answered that Edward Adair, by his first will, gave this land to John R. only, and afterwards, on the day he made said deed, told defendant that he feared that John R. might be cheated out of it, and, therefore, he intended to make him an absolute deed to the same, and inquired for one Johnson, to witness the deed, (whose name appears as a witness to the deed;) that John R. lived with testator, was honest and industrious, and by his good conduct had influence over testator, but testator was not imbecile nor easily imposed upon; that the first will was destroyed, and afterwards he was induced, when John R. was dead, to make another will. The language of the last will was: "The residue (after paying debts) of my estate, real and personal, I give and bequeath, and dispose of as follows, to-wit: To the heirs of Collins McDonald, my beloved grand-daughters, the use of all the land belonging to me, so far as not to interfere with any of the privileges by my son, John Adair, heretofore granted him; the above named heirs are to receive equally the benefits thus donated, until the youngest is disposed of by marriage, or otherwise; the land shall then be sold, and equal distribution made to all of said shares." And the defendant answered that the testator intended to convey his other lands, and not the ninety-five acres conveyed to

John R.    He further answered, that while he did not know how the deed was delivered to John R., he believed it was fairly obtained ; that after the date of the deed, the testator never paid taxes on said ninety-five acres, but John R., in his lifetime, and defendant since, had paid said taxes, and that the testator, after John R.'s death, induced this defendant, who was testator's brother, to administer on John R.'s estate, saying that John R. has nothing but said land.    He said testator occupied said land, during his life, by a verbal understanding with John R.    He insisted that the deed was right, and that his action of ejection should proceed.

During the trial, the Court allowed several witnesses to give in evidence the sayings of testator (made after said deed was executed,) to show that he understood it as a trust deed, as averred in the bill.    These sayings were objected to, when offered, but the objection was overruled.

The verdict was, that the deed should be reformed, etc.    A motion for new trial was made on various grounds, including the overruling of said objection.    The Court refused a new trial, and this is assigned as error.

AIKEN, DABNEY, for plaintiffs in error.

R. J. McCAMY, C. D. McCUTCHINS, for defendant in error.

WALKER, J.

This was a bill filed by the executor and legatees of Edward Adair, to reform a deed made by testator, to John R. McDonald.    During the trial, the Court permitted the sayings of Edward Adair, made after the execution of the deed, and in the absence of the grantee, to be proved on the part of the complainants, for the purpose of showing that the deed, as written, did not speak the intention of the maker. The admission of this testimony was objected to, and assigned as error in this Court.    Section 3735 of Rev. Code says, "Declarations of privies in estate, after the title has passed out of them, cannot be received."    This is conclusive in this case. It is admitted by both sides, that the title passed out of the

testator, and his sayings, made after the deed, were proved to defeat the title of John R. McDonald, the grantee named in the deed.    These sayings were made.in the absence of John R. McDonald, and some of them after his death.    This testimony was inadmissible, and on this ground, we reverse the judgment of the Court below.

As there is to be a new trial, it would be improper to pass upon the question as to the weight of the evidence.

Some of the questions growing out of the charge of the Court, and the requests to charge, are interesting, but perhaps it is not necessary to pass upon them *seriatim* now.

In *Admr. of Ligon vs. Rogers,* 12 *Ga. R.,* 255, the Court says, "That a court of equity has jurisdiction to correct mistakes in written contracts, has been solemnly adjudicated by this Court.   It is a jurisdiction, however, which will always be *cautiously* exercised."    Again, in the same case, on page 288, the Court says that the written evidence of the intention of the parties must prevail, unless the party can show, "by clear proof, and satisfactory evidence, that either by accident, fraud or mistake, the written instrument does not contain and express what the parties intended it should contain and express, *at the time of its execution."*    In Shellburne vs. Inchinquin, (1 Brown's Ch. 347,) Lord Thurlow said the evidence must be *strong, irrefragable evidence.*    By this, we understand that evidence offered to establish the *mistake* must not be equivocal, uncertain, contradictory, or doubtful in its character.    The evidence to show a mistake in a written instrument, must be clear and strong, so as to establish the mistake to the entire satisfaction of the court.    Gillespie vs. Moon, 2 J. C. R., 585."    Again, in *Wyche vs. Green,* 16 *Ga. R.,* 61, this Court says, "In every case, under this head of the law, the only question is, does the instrument contain what the parties intended it should, and understood that it did? Is it their agreement?    If not, then it may be reformed by *aliunde* proof, so as to make it the evidence of what was the true bargain, or contract between the parties."    A court of equity will relieve from the consequences of mistake in written contracts, but the power is exercised with caution, and

to justify it, the evidence must be clear, unequivocal and decisive, as to the mistake. Rev. Code, sec. 3062. Such is the language of our law in relation to the power of the Court of Equity to reform written instruments, and the rules by which it will be governed in the exercise of this jurisdiction.

Judgment reversed.